UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PAULA HUBBARD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | 04 C 0012 |
| DOLLAR TREE STORES, INC. and MATTHEW PHILLIPS, individually, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

The present matter comes before the court on the motion of the Defendants, Dollar Tree Stores, Inc. ("Dollar Tree") and Matthew Phillips ("Phillips") (collectively referred to as the "Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion is granted in part, and denied in part.

## BACKGROUND

Plaintiff Paula Hubbard ("Hubbard") began working for Dollar Tree in 1998 as an order selection associate in Dollar Tree's distribution warehouse (the "warehouse"). Hubbard was assigned to work during the first of three shifts. From November 2002 until May 2003, Hubbard reported to Phillips, Dollar Tree's order selection manager.

As an associate in order selection, Hubbard's duties included the pulling, or what Dollar Tree describes as the "picking", of merchandise from the warehouse shelves to be sent to Dollar Tree's retail outlets for sale. These duties involved the lifting and moving of several boxes whose weight ranged anywhere from thirty to one hundred pounds. This required repetitive bending, lifting, stretching, reaching, walking, stopping, climbing, pushing, and pulling for prolonged periods of time throughout the order selection employee's shift. In addition to the picking duties described above, a few order selection associates, including Hubbard, were cross-trained in "expense picking." Dollar Tree describes expense picking as virtually identical to regular picking, the only difference being that the items picked in the expense area were sent to Dollar Tree's retail stores as supplies rather than for sale. Dollar tree contends that expense picking and regular picking were covered by the same job description and required the same manual labor described above. Hubbard disagrees with Dollar Tree's description of expense picking duties and contends that the items in involved in expense picking were considerably lighter than those of merchandise picking.

Each day the warehouse received a listing of the amount of work to be completed and the numbers of orders to be filled for that particular day. Based upon the amount of work that needed to be completed, Dollar Tree's supervisors elected whether to offer voluntary time off ("VTO") to the order selection associates. With

VTO, associates were allowed to leave early, without pay, and without any impact on their attendance records. Traditionally, the supervisors would offer VTO at the beginning of a shift and allow associates to volunteer to take VTO. If more associates volunteered than the management could allow to leave, Dollar Tree employed a system in order to ensure that the same associates were not always receiving VTO. For example, Phillips used either an alphabetical or seniority order to ensure that every associate received the opportunity to take VTO. If an associate did not want to take VTO, it would be offered to the next associate down the line, and if the next associate declined the offer or had recently taken VTO, they were skipped and it would be offered to the next associate on the list.

In January 2003, Hubbard required surgery to open a polycystic ovary and thus took leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA"). Hubbard returned to Dollar Tree in March 2003. One month after her return, Hubbard discovered that the surgery had apparently resolved her difficulties with becoming pregnant. Hubbard told Phillips and Arlene Newburry ("Newburry"), the Human Resources assistant manager, about her pregnancy in May 2003. Hubbard alleges that when she asked Newburry what action Hubbard should take as a result of the news of her pregnancy, Newburry responded, "If you cannot do your job to the full extent, you can no longer work for Dollar Tree." Hubbard alleges that she then asked Newburry,

"Are you saying that I can't have a family?" Newburry allegedly responded in the affirmative. Hubbard further alleges that immediately after learning of her pregnancy, Phillips removed her from her primary duties and required her to engage in merchandise picking, which, according to Hubbard, involved more strenuous activity. Hubbard contends that the manual labor was so bothersome that even her coworkers became alarmed and attempted to assist her with her duties. Hubbard contends that her coworkers even offered to forego their own opportunities to take VTO in order to allow Hubbard to take it instead. Phillips, however, refused to take Hubbard off of merchandise picking duties and denied her additional VTO.

On May 8, 2003, Hubbard, while at work, noticed blood spots during a bathroom break. Hubbard claims that she was nearly prevented from contacting her doctor by Dollar Tree. After visiting her doctor, Hubbard obtained a note stating: "Due to six weeks pregnancy and spotting, advised to have desk job [until] further notice." Hubbard alleges that Newburry immediately required her to accept a leave of absence pursuant to FMLA and refused to discuss any possible modifications to Hubbard's duties.

Hubbard took a leave of absence, but because of her leave earlier in the year for surgery, her available time was exhausted by June 23, 2003. Upon her return, Hubbard contends that she was not offered an alternative position that would not require her to

engage in strenuous activities. Hubbard asserts that as a result of the stress she endured at work during her pregnancy, harassing phone calls she allegedly received from Dollar Tree during her leave, and her inability to continue her work at Dollar Tree, she suffered significant stress that manifested in multiple bleeding episodes and ultimately the loss of her baby.

Dollar Tree asserts that throughout the time Hubbard worked for the company, a policy (that has no exceptions) was in place that offered modified duty assignments only to employees who were injured on the job. If an employee was injured off the job or had a general medical restriction, the employee would be given medical leave under the FMLA. If the leave time expired and the associate was still unable to perform his or her duties, the employee would be administratively discharged from employment and would be able to reapply once he or she could work without any restrictions. Dollar Tree contends that it followed this policy and because Hubbard could not perform her job and her FMLA leave had expired, she was administratively discharged. Dollar Tree adds that while Hubbard was eligible for rehiring, she has yet to reapply for employment with Dollar Tree.

Hubbard brought the present employment discrimination suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the FMLA, 29 U.S.C. § 2601 et seq., and for intentional infliction of emotional distress.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however,

"we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). With these principles in mind, we turn to the present motion.

## DISCUSSION

As a threshold matter, we must first address the sufficiency of Hubbard's Rule 56.1(a)(3)(B) and Rule 56.1(b)(3)(B) statements. The Defendants argue her statements are not in compliance with the applicable local rules, in that Hubbard's responses are either unsupported by the record, or are irrelevant, immaterial, and non-responsive.

Pursuant to U.S. Dist. Ct., N.D. Ill., R. 56.1, when a party files a motion for summary judgment, the moving party must prepare a statement of material facts. The opposing party then submits a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party. A denial is deemed improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. Koszola v. Bd. of Educ., 385 F.3d 1104, 1107-08 (7th Cir. 2004); see Dent v. Bestfoods, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); see also Malec v. Sanford, 191 F.R.D. 581, 585

(N.D. Ill. 2000). In order to defeat a defendant's motion for summary judgment, a plaintiff must be able to point to some evidence that would be admissible at trial which a reasonable jury could rely upon in finding for the non-movant. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.

Here, the Defendants claim that Hubbard's responses in paragraphs 8, 11, 74, and 80 of her Rule 56.1(b)(3)(A) statement are not supported by the record. In her responses to these paragraphs, however, Hubbard has cited to portions of the record that sufficiently address the subject matter. The Defendants also cite numerous other paragraphs of Hubbard's Rule 56.1 statement and argue that the paragraphs contain conclusory, self-serving allegations that are immaterial and lack adequate foundation. Upon review of Hubbard's Rule 56.1 responses and statements, we disagree with the Defendants and find that there is no basis to strike Hubbard's Rule 56.1 submissions. Hubbard's submissions point to evidence that would be admissible at trial which a reasonable jury could rely upon in finding for Hubbard. The Defendants' motion to strike is therefore denied.

*A. Prima Facie Case of Pregnancy Discrimination*

In the present case, Hubbard has alleged that the Defendants discriminated against her on the basis of her pregnancy and thus her sex. A plaintiff may establish the necessary requirement of intentional discrimination either under the direct evidence

method or the indirect proof analysis, as established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). The Defendants argue that the record is devoid of direct evidence of discrimination and structure their argument based upon the <u>McDonnell Douglas</u> indirect burden shifting approach. Hubbard has, however, produced sufficient evidence, for purposes of summary judgment, to defeat the Defendants' motion under the direct evidence method.

Under the direct evidence method, a plaintiff may defeat summary judgment by producing sufficient evidence, either direct or circumstantial, that would allow a trier of fact to infer intentional discrimination by the employer. <u>Lang v. Ill. Dep't of Children & Family Servs.</u>, 361 F.3d 416, 419 (7th Cir. 2004).

Hubbard has raised issues of material fact regarding the Defendants' alleged pregnancy discrimination. First, the statements that Hubbard alleges Newburry made in early May 2003 provide sufficient direct evidence of pregnancy discrimination to defeat summary judgment. According to Hubbard, when she advised Newburry of her pregnancy, Newburry responded, "If you cannot do your job to the full extent, you can no longer work for Dollar Tree." Hubbard alleges that she then asked Newburry, "Are you saying that I can't have a family?" Newburry allegedly responded in the affirmative. While Newburry contests the veracity of Hubbard's allegations, the issue

regarding whether or not the statements were actually made is not an issue that can be disposed of via the procedural vehicle of summary judgment.

Second, Hubbard raises a genuine issue of material fact regarding Phillip's actions after learning of Hubbard's pregnancy. Hubbard claims that once Phillips learned of Hubbard's pregnancy, he assigned her solely to merchandise picking duties. Phillips counters that Hubbard performed both merchandise and expense picking, and that neither were permanent assignments. Phillips contends that throughout the course of Hubbard's employment, she assumed different duties from time to time. Phillips contentions may very well be true and it may be a coincidence that Hubbard was assigned to merchandise picking after she informed the Defendants of her pregnancy. However, we cannot make such a factual determination at the summary judgment stage.

Hubbard has also raised an additional genuine issue of material fact regarding assistance offered by her coworkers. For example, Patricia Brown, one of Hubbard's coworkers, corroborates Hubbard's contention that expense picking did not entail as much heavy lifting as merchandise picking. According to Ms. Brown's sworn declaration, she offered to perform merchandise picking so that Hubbard could work in expense. Purportedly, Phillips refused to allow this to take place. There is also

evidence in the record that other employees offered to forego their VTO so that Hubbard could take it instead.

In sum, the direct evidence creates genuine issues of material fact and also supports Hubbard's contention that the Defendants' reasons for placing her on FMLA leave and discharging her were pretextual for pregnancy discrimination. As Hubbard has produced sufficient evidence, for purposes of summary judgment, to defeat the Defendants' motion under the direct evidence method, we need not evaluate her case under the indirect method.

*B. FMLA Retaliation Claim*

The Defendants argue that Hubbard cannot establish that she was discharged in retaliation for exercising her rights under the FMLA. In response, Hubbard contends that the facts elicited in discovery support a pregnancy discrimination claim rather than retaliation based on activity protected under the FMLA, and therefore she has opted to forgo this claim. Accordingly, we grant summary judgment in favor of the Defendants as to this claim. See Barry v. Delta Airlines, Inc., 260 F.3d 803, 810 (7th Cir. 2001).

*C. Intentional Infliction of Emotional Distress Claim*

In order for Hubbard to succeed on her allegations of intentional infliction of emotional distress against the Defendants, she must establish that: (1) the Defendants' conduct was extreme and outrageous; (2) the Defendants either intended or knew that

there was a high probability that the conduct would cause severe emotional distress; and (3) the Defendants' conduct in fact caused severe emotional distress. Cook v. Winfrey, 141 F.3d 322, 330 (7th Cir. 1998). The Defendants argue that Hubbard's claim fails for two reasons. First, the Defendants argue that Hubbard is unable to establish any element of a prima facie case of intentional infliction of emotional distress. Second, the Defendants argue that Hubbard's claim is preempted by the Illinois Human Rights Act ("IHRA") because her allegations are inextricably linked to her allegations of pregnancy discrimination and they arise out of the same facts.

The IHRA confines claims of civil rights violations under Illinois law to proceedings under the IHRA. Pregnancy discrimination is one of the civil rights violations specified within the IHRA and, therefore, preempts tort claims with allegations that are inextricably linked and identical to those supporting the pregnancy discrimination claim. Jansen v. Packaging Corp. of America, 123 F.3d 490, 493 (7th Cir. 1997).

Here, Hubbard has relied upon the same factual basis to substantiate her pregnancy discrimination claim and her claim of intentional infliction of emotional distress. Specifically, Hubbard claims that she was subjected to intentional and severe emotional distress when Phillips, because of her pregnancy, allegedly: (1) increased her workload; (2) denied her request for VTO; and (3) denied her access to phone calls

from her physician. Hubbard's claims are premised upon the fact that the actions of which she complains violate the Pregnancy Discrimination Act, and accordingly, are preempted by the IHRA. We grant the Defendants' motion for summary judgment as to Hubbard's claim of intentional infliction of emotional distress.

## CONCLUSION

Based on the foregoing analysis, the Defendants' motion for summary judgment is granted in part, and denied in part. The Defendants' motion to strike is denied.

*Charles P. Kocoras*
Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAR - 9 2005